# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
| UNITY08, *et al.*,                   | ) |                          |
|                                      | ) |                          |
| Plaintiffs,                          | ) |                          |
|                                      | ) |                          |
| v.                                   | ) |                          |
|                                      | ) | No. 1:07-cv-00053 (RWR)  |
| FEDERAL ELECTION COMMISSION,         | ) |                          |
|                                      | ) |                          |
| Defendant.                           | ) |                          |

_____

## MOTION OF THE CAMPAIGN LEGAL CENTER AND DEMOCRACY 21
## TO PARTICIPATE AS AMICI CURIAE
## WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

The Campaign Legal Center (the "CLC") and Democracy 21 respectfully move this Court for leave to participate in this case as *amici curiae* in support of Defendant Federal Election Commission (the "FEC") in the above-captioned matter and to file the attached Memorandum in Support of Defendant.[1]

As grounds for this motion, *amici* would show unto the Court that:

1.      The CLC is a nonpartisan, nonprofit organization which works in the area of campaign finance law, and participates in state and federal court litigation throughout the nation regarding disclosure, political advertising, contribution limits, enforcement issues, and other campaign finance matters.   It also participates in rulemaking and advisory opinion

---

[1]      The CLC and Democracy 21 originally attempted to file the Memorandum in Support of Defendant, along with a motion for leave to participate, electronically on April 11, 2007.  It has since come to *amici*'s attention that these electronically-filed documents were not received by the Court and were not entered into the docket.  The documents were, however, served on the parties in the case on April 11, 2007. *See infra* paragraphs 8-10 for further details regarding the April filing.  *Amici* are resubmitting their April 11, 2007 Memorandum in Support of Defendant with this motion.

proceedings at the FEC to ensure that the agency is properly enforcing federal election laws and files complaints with the FEC requesting that enforcement actions be taken against individuals or organizations which violate the law.

2.     Democracy 21 is a nonprofit, nonpartisan organization dedicated to making democracy work for all Americans. Democracy 21, and its education arm, Democracy 21 Education Fund, work to eliminate the undue influence of big money in American politics and to ensure the integrity and fairness of government decisions and elections.   The organization promotes campaign finance reform and other political reforms to accomplish these goals.  It also participates in rulemakings and advisory opinion proceedings, and other administrative proceedings, at the FEC.

3.     The CLC and Democracy 21 have provided legal counsel to parties and *amici* in numerous campaign finance cases at the federal and state court levels, including representing intervening defendants in *McConnell v. FEC*, 540 U.S. 93 (2003).  More recently Democracy 21 and the CLC have represented parties and *amici* in the following cases relating to the interpretation of the federal campaign finance laws: *Shays v. FEC* ("*Shays I*"), 337 F. Supp. 2d 28 (D.D.C. 2004), *motion for stay denied*, 340 F. Supp. 2d 39 (D.D.C. 2004), *aff'd*, 414 F.3d 76 (D.C. Cir. 2005), *reh'g denied*, Oct. 21, 2005; *Shays v. FEC* ("*Shays II*"), 424 F. Supp. 2d 100 (D.D.C. 2006), *motion for further relief denied* (D.D.C. Aug. 30, 2007);

and *Shays v. FEC* ("*Shays III*"), No. 06–CV–1247 (D.D.C. Sept. 12, 2007).[2]

4.    The present case concerns a challenge brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), and the First Amendment of the U.S. Constitution to a recent advisory opinion issued by the FEC, which found that plaintiff Unity08 was a "political committee," subject to the restrictions and obligations of the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq. See* Advisory Opinion 2006-20 (Oct. 10, 2006). The analysis of "political committee" status under FECA and the legal obligations of political committees are key issues in campaign finance law, and directly impact the interests of the *amici curiae*.

5.    Both the CLC and Democracy 21 were active in the administrative proceedings that gave rise to this case. In response to Unity08's request for an advisory opinion, the CLC and Democracy 21 filed comments with the FEC on June 19, 2006, arguing that Unity08's campaign-related goals, and its expenditures for this purpose, demonstrated that it is a "political committee," pursuant to 2 U.S.C. § 431(4)(A). The CLC and Democracy 21 also filed supplemental comments with the FEC on August 23, 2006, urging adoption of the draft advisory opinion issued by the FEC's General Counsel on July 13, 2006.

6.    The CLC and Democracy 21 wish to continue their participation in the Unity08 matter by filing the attached memorandum. *Amici* believe that

---

[2]    The CLC and Democracy 21 also participated as counsel in the two most recent campaign finance cases in the United States Supreme Court: *Randall v. Sorrell*, 126 S. Ct. 2479 (2006), and *FEC v. Wisconsin Right to Life, Inc.,* 127 S. Ct. 2652 (2007).

this brief will assist the Court's understanding of the statutes, FEC regulations and case law relating to the question of when a group becomes a "political committee" under the federal campaign finance laws.

7.    Counsel for Plaintiffs Unity08 *et al.* (John James Duffy, Jr.) and counsel for Defendant FEC (David Brett Kolker) have been contacted about their consent to the *amici* participation of the CLC and Democracy 21 in this case.   Counsel for Defendant has consented to the participation, and counsel for Plaintiffs has not consented.

8.    The motion for leave to participate as *amici curiae* and the attached memorandum were originally filed electronically on April 11, 2007.  *See* copy of *amici*'s April 11, 2007 email to the Clerk, attached as Exhibit A. This was the date that defendant FEC filed its motion for summary judgment.   Counsel for *amici* also served the papers upon counsel for plaintiffs and defendant via email and first-class mail.  *See* copy of original motion, proposed order and certificate of service, attached as Exhibit B.

9.    *Amici* have since learned, however, that the Court did not receive the papers filed via email on April 11, 2007, and that the papers were not entered into the case docket.[3]

---

[3]      On April 11, 2007, counsel for *amici* sent the motion and accompanying memorandum to the email address dcd_cmecf_ms@dcd.uscourts.gov, as provided by the Supplement to the Local Rules.  *See* Clerk's Office General Information & Civil Filing Procedures, at Section II(F)(3)(a), *available at* http://www.dcd.uscourts.gov/LocalRulesSupplement.pdf.  Prior to emailing the motion and memorandum to the Court, counsel for *amici* called the Office of the Clerk regarding electronic filing procedures, and a staff member confirmed that this was the proper email address.  Counsel has since been informed that the correct email address is dcd_cmecf @dcd.uscourts.gov, not the email address used on April 11, 2007, dcd_cmecf_ms@dcd.uscourts.gov, which was apparently defunct, although we received no notice of that at the time we made the submission in April.

10.     The CLC and Democracy 21 respectfully request that the Court allow the resubmission of their April 11, 2007 Memorandum in Support of Defendant.  Defendant FEC's motion for summary judgment has not yet been decided, and indeed, oral argument has not yet been scheduled. Therefore, *amici*'s memorandum is still timely, and participation by *amici* will not delay these proceedings in any way or burden any party.

WHEREFORE, premises considered, the CLC and Democracy 21 respectfully pray that this Court will grant this motion and permit their participation in this case as *amici curiae*.  A proposed Order is attached.

Respectfully submitted,

/s/ J. Gerald Hebert
J. GERALD HEBERT
(D.C. Bar No. 447676)
PAUL S. RYAN
(D.C. Bar No. 502514)
THE CAMPAIGN LEGAL
CENTER
1640 Rhode Island Ave., N.W.
Suite 650
Washington, D.C.  20036
Tel: (202) 736-2200

Counsel for Movant Campaign Legal
Center

/s/ Donald J. Simon
Donald J. Simon
(D.C. Bar No. 256388)
SONOSKY, CHAMBERS,
SACHSE,
ENDRESON & PERRY, LLP
1425 K Street, N.W.
Suite 600
Washington, D.C. 20005
(202) 682-0240

Fred Wertheimer
(D.C. Bar No. 154211)
DEMOCRACY 21
1875 I Street, N.W.
Suite 500
Washington, D.C. 20005
(202) 429-2008

Counsel for Movant Democracy 21


**Dated:  December 19, 2007.**

**Exhibit A**

**From:** Paul Ryan
**Sent:** Wednesday, April 11, 2007 3:37 PM
**To:** 'dcd_cmecf_ms@dcd.uscourts.gov'
**Subject:** Unity08, et al. v. Federal Election Commission, No. 1:07-cv-00053 (RWR)

**Attachments:** CLC and D21 Motion for Leave to Participate as Amici Curiae.pdf; CLC and D21 Amici Brief in Unity 08.pdf
To the Office of the Clerk:

Please find attached the following pdf documents to be filed in *Unity08, et al. v. Federal Election Commission*, No. 1:07-cv-00053 (RWR):

(1) Motion of the Campaign Legal Center and Democracy 21 to Participate as Amici Curiae with Supporting Memorandum of Points and Authorities, proposed order and certificate of service; and

(2) Memorandum of Campaign Legal Center and Democracy 21 as Amici Curiae in Support of Defendant Federal Election Commission.

Thank you for your attention.

PSR

———————————————————————————

Paul Seamus Ryan
FEC Program Director
 & Associate Legal Counsel
The Campaign Legal Center
1640 Rhode Island Ave. NW, Ste. 650
Washington, DC 20036
Office Ph. (202) 736-2200
Mobile Ph. (202) 262-7315
Fax (202) 736-2222
CLC Blog: http://www.clcblog.org
CLC Web Site: http://www.campaignlegalcenter.org
———————————————————————————

Sign up for The Campaign Legal Center Blog at: http://www.campaignlegalcenter.org/signup.html

**Exhibit B**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITY08, *et al*.,                                  )
                                                    )
                              Plaintiffs,            )
                                                    )
               v.                                   )
                                                    )      No. 1:07-cv-00053 (RWR)
FEDERAL ELECTION COMMISSION,                        )
                                                    )
                              Defendant.             )
_____)

## MOTION OF THE CAMPAIGN LEGAL CENTER AND DEMOCRACY 21
## TO PARTICIPATE AS AMICI CURIAE
## WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

The Campaign Legal Center (the "CLC") and Democracy 21 respectfully move this Court for leave to participate in this case as *amici curiae* in support of Defendant Federal Election Commission (the "FEC") in the above-captioned matter and to file the attached Memorandum in Support of Defendant.

As grounds for this motion, *amici* would show unto the Court that:

1.       The CLC is a nonpartisan, nonprofit organization which works in the area of campaign finance law, and participates in state and federal court litigation throughout the nation regarding disclosure, political advertising, contribution limits, enforcement issues, and other campaign finance matters. It also participates in rulemaking and advisory opinion proceedings at the FEC to ensure that the agency is properly enforcing federal election laws and files complaints with the FEC requesting that enforcement actions be taken against individuals or organizations which violate the law.

2.      Democracy 21 is a nonprofit, nonpartisan organization dedicated to making democracy work for all Americans. Democracy 21, and its education arm, Democracy 21 Education Fund, work to eliminate the undue influence of big money in American politics and to ensure the integrity and fairness of government decisions and elections. The organization promotes campaign finance reform and other political reforms to accomplish these goals. It also participates in rulemakings and advisory opinion proceedings, and other administrative proceedings, at the FEC.

3.      The CLC and Democracy 21 have provided legal counsel to parties and *amici* in numerous campaign finance cases at the federal and state court levels, including representing intervening defendants in *McConnell v. FEC*, 540 U.S. 93 (2003). More recently Democracy 21 and the CLC have represented parties and *amici* in the following cases relating to the interpretation of the federal campaign finance laws: *Shays v. FEC* ("*Shays I*"), 337 F. Supp. 2d 28 (D.D.C. 2004), *motion for stay denied*, 340 F. Supp. 2d 39 (D.D.C. 2004), *aff'd*, 414 F.3d 76 (D.C. Cir. 2005), *reh'g denied*, Oct. 21, 2005; *Shays v. FEC* ("*Shays II*"), 424 F. Supp. 2d 100 (D.D.C. 2006), *motion for further relief filed* (D.D.C. Apr. 3, 2007); and *Shays v. FEC* ("*Shays III*"), No. 06–CV–1247 (D.D.C. summary judgment motion filed, Dec. 8, 2006).[1]

4.      The present case concerns a challenge brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), and the First Amendment of the

---

[1]     The CLC and Democracy 21 also participated as counsel in the two most recent campaign finance cases in the United States Supreme Court: *Randall v. Sorrell*, 126 S.Ct. 2479 (2006), and *Wisconsin Right to Life v. FEC*, No. 04-1581, 546 U.S. 410 (2006), *remanded to* 2006 WL 3746669 (D.D.C. Dec. 21, 2006), *on appeal to* No. 06-970 (opening brief filed, Feb. 23, 2007).

U.S. Constitution to a recent advisory opinion issued by the FEC, which found that plaintiff Unity08 was a "political committee," subject to the restrictions and obligations of the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq*. *See* Advisory Opinion 2006-20 (Oct. 10, 2006). The analysis of "political committee" status under FECA and the legal obligations of political committees are key issues in campaign finance law, and directly impact the interests of the *amici curiae*.

5.    Both the CLC and Democracy 21 were active in the administrative proceedings that gave rise to this case. In response to Unity08's request for an advisory opinion, the CLC and Democracy 21 filed comments with the FEC on June 19, 2006, arguing that Unity08's campaign-related goals, and its expenditures for this purpose, demonstrated that it is a "political committee," pursuant to 2 U.S.C. § 431(4)(A). The CLC and Democracy 21 also filed supplemental comments with the FEC on August 23, 2006, urging adoption of the draft advisory opinion issued by the FEC's General Counsel on July 13, 2006.

6.    The CLC and Democracy 21 wish to continue their participation in the Unity08 matter by filing the attached memorandum. *Amici* believe that this brief will assist the Court's understanding of the statutes, FEC regulations and case law relating to the question of when a group becomes a "political committee" under the federal campaign finance laws.

7.    Counsel for Plaintiff Unity08 (John James Duffy, Jr.) and counsel for Defendant FEC (David Brett Kolker) have been contacted about their consent to the *amici*

participation of the CLC and Democracy 21 in this case. Counsel for Defendant has consented to the participation, and counsel for Plaintiffs has not consented.

8.    This filing is timely because this motion and the attached memorandum are being filed on the date that the principal brief of defendant FEC is due. Moreover, participation by *amici* will not delay these proceedings in any way or burden any party.

WHEREFORE, premises considered, the CLC and Democracy 21 respectfully pray that this Court will grant this motion and permit their participation in this case as *amici curiae*. A proposed Order is attached.

Respectfully submitted,


/s/ J. Gerald Hebert
J. GERALD HEBERT
(D.C. Bar No. 447676)
PAUL S. RYAN
(D.C. Bar No. 502514)
THE CAMPAIGN LEGAL CENTER
1640 Rhode Island Ave., N.W.
Suite 650
Washington, D.C.  20036
Tel: (202) 736-2200

Counsel for Movant Campaign Legal Center


Donald J. Simon
(D.C. Bar No. 256388)
SONOSKY, CHAMBERS, SACHSE,
ENDRESON & PERRY, LLP
1425 K Street, N.W.
Suite 600
Washington, D.C. 20005
(202) 682-0240

Fred Wertheimer
(D.C. Bar No. 154211)
DEMOCRACY 21
1875 I Street, N.W.
Suite 500
Washington, D.C. 20005
(202) 429-2008

Counsel for Movant Democracy 21


**Dated:  April 11, 2007**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
UNITY08, *et al*.,                              )
                                                )
                      Plaintiffs,               )
                                                )
            v.                                  )
                                                )      No. 1:07-cv-00053 (RWR)
FEDERAL ELECTION COMMISSION,                    )
                                                )
                      Defendant.                )
_____)

## <u>ORDER</u>

Pending before the Court is a motion by the CAMPAIGN LEGAL CENTER and

DEMOCRACY 21 for leave to appear in this cause as *amici curiae* and to file the

Memorandum in Support of Defendant Federal Election Commission.  For good cause

shown, the motion for leave to participate as *amici curiae* by the Campaign Legal Center and

Democracy 21 is hereby GRANTED and the Memorandum of *Amici Curiae* shall be filed in

this case.

This _____ day of April, 2007.


                                        _____
                                        United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion with supporting memorandum and proposed order have been filed via email, pursuant to Part I(II)(F) of the "Clerk's Office General Information & Civil Filing Procedures" (Documents Exempt From the CM/ECF System), on this 11th day of April, 2007.  In addition, the following counsel have been served with copies of the foregoing motion for leave to participate *amici curiae* with supporting memorandum of points and authorities and proposed order via email (where email addresses are available and known) and via first-class mail, postage pre-paid.

**Attorneys Representing Plaintiffs:**

Robert Elijah Jordan III
John James Duffy, Jr.
Rhonda M. Bolton
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
(202) 429-3000


**Attorneys Representing Defendants:**

David Brett Kolker
Adav Noti
Steve Nicoloas Hajjar
Vivian Clair
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
(202) 694-1650


/s/ J. Gerald Hebert
J. Gerald Hebert

**Proposed Order and Certificate of Service
For December 19, 2007 Motion and Memorandum**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| UNITY08, *et al.*,            ) | |
| ) | |
| Plaintiffs,            ) | |
| ) | |
| v.            ) | No. 1:07-cv-00053 (RWR) |
| ) | |
| FEDERAL ELECTION COMMISSION,            ) | |
| ) | |
| Defendant.            ) | |

_____)

### <u>ORDER</u>

Pending before the Court is a motion by the CAMPAIGN LEGAL CENTER
and DEMOCRACY 21 for leave to appear in this cause as *amici curiae* and to file the
Memorandum in Support of Defendant Federal Election Commission.  For good
cause shown, the motion for leave to participate as *amici curiae* by the Campaign
Legal Center and Democracy 21 is hereby GRANTED and the Memorandum of
*Amici Curiae* shall be filed in this case.

This _____ day of December, 2007.


_____
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion with supporting memorandum and proposed order have been filed via email, pursuant to Part I(II)(F) of the "Clerk's Office General Information & Civil Filing Procedures" (Documents Exempt From the CM/ECF System), on this 19th day of December, 2007.  In addition, the following counsel have been served with copies of the foregoing motion for leave to participate *amici curiae* with supporting memorandum of points and authorities and proposed order via email (where email addresses are available and known) and via first-class mail, postage pre-paid.

**Attorneys Representing Plaintiffs:**

John James Duffy, Jr.
Robert Elijah Jordan III
Rhonda M. Bolton
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
(202) 429-3000


**Attorneys Representing Defendants:**

David Brett Kolker
Vivian Clair
Adav Noti
Steve Nicoloas Hajjar
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
(202) 694-1650


/s/ J. Gerald Hebert
J. Gerald Hebert

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
UNITY08, *et al.*,                        )
                                          )
                    Plaintiffs,           )
                                          )
            v.                            )
                                          )    No. 1:07-cv-00053 (RWR)
FEDERAL ELECTION COMMISSION,              )
                                          )
                    Defendant.            )
_____)


## MEMORANDUM OF CAMPAIGN LEGAL CENTER AND DEMOCRACY 21 AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT FEDERAL ELECTION COMMISSION

Donald J. Simon
(D.C. Bar No. 256388)
SONOSKY, CHAMBERS, SACHSE,
ENDRESON & PERRY, LLP
1425 K Street, N.W.
Suite 600
Washington, D.C. 20005
(202) 682-0240

Fred Wertheimer
(D.C. Bar No. 154211)
DEMOCRACY 21
1875 I Street, N.W.
Suite 500
Washington, D.C. 20005
(202) 429-2008

Counsel for *Amicus Curiae*
  Democracy 21

J. Gerald Hebert
(D.C. Bar No. 447676)
Paul S. Ryan
(D.C. Bar No. 502514)
THE CAMPAIGN LEGAL CENTER
1640 Rhode Island Ave., N.W.
Suite 650
Washington, DC  20036
Tel: (202) 736-2200

Counsel for *Amicus Curiae*
  Campaign Legal Center

# TABLE OF CONTENTS

Page

**SUMMARY OF ARGUMENT** ...................................................................................1

**ARGUMENT** ...........................................................................................................3

   **I.**   **The FEC Correctly Advised Unity08 That Its Proposed Activities Would Render It a Federal Political Committee**.............................................................................3

       A.  An Entity Whose Major Purpose Is "the Nomination or Election of a Candidate" and Which Makes "Expenditures" or Accepts "Contributions" in Excess of $1,000 Is a Political Committee.....................................................................4

       B.  The FEC Correctly Interpreted and Applied FECA and FEC Regulations to Determine that Unity08 Meets the Definition of "Political Committee." ....................6

          1.  The First Prong: Unity08 Meets the "Major Purpose" Test. ...................................6

          2.  The Second Prong: Unity08 Meets the $1,000 Expenditure Test.........................11

   **II.**   **The FEC's Determination that Unity08 Is a "Political Committee" Does Not Violate the First Amendment.**.....................................................................16

       A.  The Supreme Court Has Found That the Regulation of Political Committees Under FECA Does Not Violate the First Amendment. ...............................................17

       B.  The Regulation of Unity08 as a Political Committee Is Justified by the Important Government Interests Recognized in *Buckley*, *CalMed* and *McConnell*.....................19

**CONCLUSION** .....................................................................................................20

# TABLE OF AUTHORITIES

**Cases:**

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................ *passim*

*California Medical Ass'n v. FEC*, 453 U.S. 182 (1981) ........................................ 3, 16, 18

*FEC v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431 (2001) ...................... 19

*FEC v. Florida for Kennedy Committee*, 681 F.2d 1281 (11th Cir. 1982) .................... 14

*FEC v. GOPAC, Inc.*, 917 F. Supp. 851 (D.D.C. 1996) ........................................... 7, 15

*FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380 (D.C. Cir. 1981) ............. 14, 15

*FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986) ................................... 7, 9

*FEC v. Malenick*, 310 F. Supp. 2d 230 (D.D.C. 2004) ............................................ 6-7

*FEC v. Furgatch*, 807 F.2d 857 (9th Cir. 1987) .................................................. 5

*McConnell v. FEC*, 540 U.S. 93 (2003) ........................................................ *passim*

**Statutes, Legislation and Legislative History:**

Federal Election Campaign Act, 2 U.S.C. §§ 431 *et seq.* ......................................... 1

Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107–155, 116 Stat. 81 (2002) ................ 5

2 U.S.C. § 431(4)(A) ......................................................................... 1, 4, 16

2 U.S.C. § 431(8)(A)(i) ............................................................................ 4

2 U.S.C. § 431(9)(A)(i) ......................................................................... 4, 11

2 U.S.C. § 431(20)(A)(iii) ......................................................................... 5

2 U.S.C. § 437c(c) ............................................................................... 14

2 U.S.C. § 441a(a)(1)(C) .......................................................................... 18

2 U.S.C. § 441i(a) ............................................................................... 18

2 U.S.C. § 441i(b)(1) ............................................................................. 5

26 U.S.C. § 501(c)(4) ............................................................................. 9

26 U.S.C. § 527(e) ............................................................................. 10, 12

**Regulations and Agency Materials:**

11 CFR § 100.5(a) ...................................................................................................1

11 CFR § 100.111(a) ............................................................................................11

11 CFR § 100.22 ...................................................................................................13

11 C.F.R. § 110.6(b)(1) ........................................................................................13

Advisory Opinion 1984-11 (May 3, 1984) ..........................................................11

Advisory Opinion 1994-05 (April 18, 1994) .......................................................11

Advisory Opinion 2003-23 (November 7, 2003) .............................................13, 14

Advisory Opinion Request 2006-20 (March 30, 2006) ...............................1, 7, 11

Advisory Opinion 2006-20 (Oct. 10, 2006) .................................................. *passim*

**Additional Materials:**

Memorandum of Law in Support of Plaintiffs' Motion for Summary
Judgment ........................................................2, 7, 8, 9, 12, 14, 16, 17, 19

## SUMMARY OF THE ARGUMENT

The question in this case is whether plaintiff Unity08, a self-proclaimed "nascent political party," is a "political committee" under the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq.*  *See also* 2 U.S.C. § 431(4)(A); 11 CFR § 100.5(a) (defining "political committee").

On May 30, 2006, Unity08 filed an advisory opinion request seeking the opinion of the Federal Election Commission (the "FEC") as to whether Unity08 is a "political committee" under FECA.  *See* Advisory Opinion Request ("AOR") 2006-20 (March 30, 2006).  In the AOR, Unity08 stated that its "Goal One" is "to elect a Unity Ticket for President and Vice President of the United States in 2008…."  AOR 2006-20 at 2.  Unity08 explained that its plan is "to qualify for ballot positions" as a party "in certain key states for the offices of President and Vice President of the United States," and then "to select, using a 'virtual' convention over the Internet, candidates for the office of President and Vice President of the United States to run in those ballot positions."  *Id.* at 3, 4.

Although Unity08 is thus, by all appearances, organized solely for the purpose of running candidates for President and Vice President in the 2008 election, it seeks to be exempt from the campaign finance laws that apply to all federal political parties and political committees, until such time as it actually nominates its presidential and vice-presidential candidates.  To this end, Unity08 urged the FEC in its AOR to opine that it is not a political committee and, consequently, that it is not required to comply with the contribution limits, source prohibitions and disclosure requirements that apply under FECA to political committees.  In other words, Unity 08 requested the right to raise contributions unrestricted in source or size – colloquially, "soft money" – to support its efforts to influence the 2008 presidential election.

On October 10, 2006, the FEC issued Advisory Opinion 2006-20, advising Unity 08 that its proposed activities would meet the test for "political committee" status, because (1) its "major purpose" is "the nomination or election" of a "Unity" ticket for President and Vice President in the 2008 elections, and (2) it has made or will make over $1,000 in "expenditures," in the form of "monies spent by Unity08 to obtain ballot access." *See* AO 2006-20 at 3-5. The FEC's conclusion that Unity 08 must register and operate as a political committee is plainly correct.

In its summary judgment motion, Unity08 argues that an organization does not receive "contributions" or make "expenditures" under FECA—predicate acts to establish "political committee" status—until it expressly advocates the election or defeat of a "clearly identified" candidate for federal office. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Unity08 SJ Memo") at 8-12. Until it nominates its candidates and they thus become "clearly identified," Unity08 argues that it can operate outside the law.

But this argument misconstrues the term "expenditure," which is not limited simply to "express advocacy" for groups whose "major purpose" is to influence elections, such as Unity08. Rather, any spending by such a group "for the purpose of influencing" an election constitutes an "expenditure." Unity08's spending as, in its own words, a "nascent political party," surely falls within that definition, even though it has not yet nominated its candidates for President and Vice President. Furthermore, even applying Unity08's own standard for what constitutes an "expenditure," Unity08 has spent, is spending, and will continue to spend funds to support candidates who are "clearly identified" by descriptive terms such as election cycle (2008), party affiliation (Unity08) and office sought (United States President). Because these descriptive terms are sufficient to "clearly identify" specific federal candidates, Unity08's spending constitutes "expenditures" even under its narrow definition of the term.

Further, this Court should reject Unity08's argument that no state interests support the application of FECA political committee requirements and restrictions to Unity08 and, consequently, that the FEC's opinion violates the First Amendment.  The regulation of political committees has long been upheld by the Supreme Court because it is supported by compelling governmental interests, including the prevention of corruption and the appearance of corruption. *See, e.g., California Medical Ass'n v. FEC (CalMed)*, 453 U.S. 182 (1981).

Just as the Supreme Court recognized in *McConnell v. FEC*, 540 U.S. 93, 154-61 (2003), that unlimited "soft money" contributions to federal political party committees pose a threat of corruption of such parties, their candidates and their officeholders – regardless of *when* such funds are raised (*e.g.*, prior to the party's primary) or the *purposes* for which such funds are spent (*e.g.*, so-called "party building") – so too would unlimited contributions to Unity08 pose a threat of real and apparent corruption of Unity08's eventual nominees.

For all these reasons, plaintiffs' motion for summary judgment should be denied, and defendant FEC's cross-motion for summary judgment should be granted.

## **ARGUMENT**

### **I.    The FEC Correctly Advised Unity08 That Its Proposed Activities Would Render It a Federal Political Committee.**

In AO 2006-20, the FEC correctly advised Unity08 that its proposed activities meet the two-part test for "political committee" status, because its public statements indicate that its "major purpose" is the nomination and election of a "Unity Ticket" for President, and its spending constitutes "expenditures," as defined by the Act.  Unity08 has provided no legal support for its argument that it is not making "expenditures" simply because it has not yet nominated its presidential and vice-presidential candidates.

A.    An Entity Whose Major Purpose Is "the Nomination or Election of a Candidate" and Which Makes "Expenditures" or Accepts "Contributions" in Excess of $1,000 Is a Political Committee.

The FECA defines a "political committee" as a group "which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year . . ." 2 U.S.C. § 431(4)(A). The statute, in turn, defines "expenditure" and "contribution" to encompass any spending or fundraising, respectively, "for the purpose of influencing any election for Federal office." *Id.* §§ 431(8)(A)(i) (defining "contribution"), (9)(A)(i) (defining "expenditure").

In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court addressed constitutional concerns that the statutory definition of "political committee" was overbroad and, to the extent it incorporated the definition of "expenditure," vague as well. *Id.* at 76-80. The Supreme Court found the term "expenditure" caused "line drawing problems" by potentially "encompassing both issue discussion and advocacy of a political result," so that the "political committee" definition (which relied on the definition of "expenditure") might "reach groups engaged purely in issue discussion." *Id.* at 79.

To resolve these constitutional concerns, the *Buckley* Court imposed two different limiting constructions.

First, it narrowed the definition of "political committee" to encompass only "organizations that are under the control of a candidate *or the major purpose of which is the nomination or election of a candidate*." *Id.* (emphasis added). For such "major purpose" groups, there was no vagueness concern about the statutory "for the purpose of influencing" definition of "expenditure" because, the Supreme Court held, disbursements by such groups "can be assumed to fall within the core area sought to be addressed by Congress. They are, *by definition, campaign related*." *Id.* (emphasis added).

4

But second, "when the maker of the expenditure is *not* within these categories – when it is an individual other than a candidate or a group other than a 'political committee,'" the Court narrowly construed the term "expenditure" to reach "only funds used for communications that *expressly advocate* the election or defeat of a *clearly identified* candidate." *Id.* at 79-80 (emphasis added).[1]

The importance of this distinction was the Supreme Court's recognition that the broader, statutory definition of "expenditure" as spending "for the purpose of influencing" an election is *not* vague when applied to groups "the major purpose of which is the nomination or election of a candidate," because spending by such groups is "by definition, campaign-related." *Id.* at 79. The Court imposed the narrowing gloss of "express advocacy" on the term "expenditure" *only* with regard to groups *other than* such "major purpose" groups. *Id.* at 80.

The Supreme Court reaffirmed this approach in *McConnell* in its consideration of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81 (2002). In reviewing a BCRA requirement that state parties use hard money to pay for a public communication that "promotes or supports" or "attacks or opposes" a federal candidate, 2 U.S.C. §§ 431(20)(A)(iii), 441i(b)(1), the Court rejected a vagueness challenge because the words "clearly set forth the confines within which potential party speakers must act in order to avoid triggering the provision." *McConnell,* 540 U.S. at 169 n.64 (emphasis added).[2]  Quoting *Buckley*, the Court noted that "a general requirement that political committees disclose their

---

[1]        The *Buckley* Court defined express advocacy to include phrases such as  "vote for," "vote against," "elect," "support," "reject" or "defeat" a clearly identified candidate.  424 U.S. at 44 n.52.  In a subsequent case, the Ninth Circuit somewhat expanded the definition of express advocacy also to include speech which "when read as a whole, and with limited reference to external events, [is] susceptible of no other reasonable interpretation but as an exhortation to vote for or against a specific candidate."  *FEC v. Furgatch,* 807 F.2d 857, 864 (9th Cir. 1987).  The message must be "unmistakable and unambiguous, suggestive of only one plausible meaning."  *Id.*  The Commission has codified the so-called "magic words" standard of *Buckley* at 11 C.F.R. § 100.22(a), and the *Furgatch* standard at § 100.22(b).

[2]        The "promotes, attacks, supports or opposes" test of BCRA is colloquially known as the "PASO" test.

expenditures raised no vagueness problems because the term 'political committee' 'need only

encompass organizations that are under the control of a candidate or the major purpose of which

is the nomination or election of a candidate' and thus a political committee's expenditures 'are,

by definition, campaign related.'"  *Id.*  Thus, the Court in *McConnell* reaffirmed that the express

advocacy test set forth in *Buckley* does not apply to groups whose major purpose is to influence

federal elections.

For this reason, the "express advocacy" test is not relevant to the question of whether a

"major purpose" organization is spending money to influence the election of federal candidates,

and whether it is, accordingly, making "expenditures."  Because the "express advocacy" standard

does not apply to the definition of "expenditures" in this context, it follows that it is also

irrelevant in determining whether a "major purpose" group has made $1,000 in "expenditures"

for purposes of determining political committee status.  Instead, if a group meets the first prong

of the political committee test (*i.e.,* that it has a "major purpose" to influence elections), the

second prong of the test (*i.e.,* whether its spending constitutes "expenditures") is governed by the

broader statutory definition of expenditure – spending "for the purpose of influencing any

Federal election," not by the express advocacy test.

>    B.    The FEC Correctly Interpreted and Applied FECA and FEC Regulations to
>           Determine that Unity08 Meets the Definition of "Political Committee."

>          1.    The First Prong: Unity08 Meets the "Major Purpose" Test.

The FEC correctly found that Unity08 meets the "major purpose" test.  Several cases

have established that a group's "major purpose" can be demonstrated not only by its spending,

but also by its public statements or positions.  *See, e.g., FEC v. Malenick*, 310 F. Supp. 2d 230,

234-36 (D.D.C. 2004) (finding the organization evidenced its "major purpose" through its own

materials which stated the organization's goal of supporting the election of Republican Party

candidates for Federal office and through efforts to get prospective donors to consider supporting

Federal candidates); *FEC v. GOPAC, Inc.*, 917 F. Supp. 851, 859 (D.D.C. 1996) (finding that the

"organization's [major] purpose may be evidenced by its public statements of its purpose or by

other means").  A group's actual activities can also evidence its "major purpose."  *See, e.g., FEC*

*v. Massachusetts Citizens for Life (MCFL)*, 479 U.S. 238, 262 (1986) (noting that a group's

independent spending activities to influence political campaigns can "become so extensive that

*the organization's major purpose may be regarded as campaign activity*") (emphasis added); *see*

*also McConnell*, 540 U.S. at 170 n.64.

Here, Unity 08's self-proclaimed goal is to nominate and elect candidates for President

and Vice President in the 2008 election.  In 2006, Unity08's web site home page stated

prominently that "Unity08 is a citizens' movement to get our country back on track by

nominating and electing a Unity Ticket in the '08 presidential election to promote leadership, not

partisanship."  *See* http://www.unity08.com (visited August 18, 2006).  Similarly, Unity08 stated

in its AOR that "Goal One is to elect a Unity Ticket for President and Vice President of the

United States in 2008 . . . ."  AOR 2006-20, at 2.  Given this description of its goals, it cannot be

contested that Unity08 is a group "the major purpose of which is the nomination or election of a

candidate," as set forth by *Buckley*.

Although Unity08 does not – and cannot – dispute that its "Goal One" is the nomination

and election of a "Unity Ticket," it nevertheless attempts to argue that it is not a "major purpose"

group.  Its argument rests on its unsupported assertion that the "major purpose" test has

"received a limiting construction pursuant to *Buckley*" and has been "construed to apply where

there is an 'identified candidate.'"  Unity08 SJ Memo at 19.  Because Unity08 has not yet

nominated its candidates, its argument continues, it does not yet have a "clearly identified" candidate, and its purpose does not relate to candidate advocacy.  Unity08 SJ Memo at 20.

This argument misapprehends the "clearly identified candidate" standard.  That test is part of the express advocacy standard which determines whether a *non*-major purpose group is making "expenditures" – *i.e.*, whether such a group is expressly advocating the election or defeat of a "clearly identified candidate."  *Buckley,* 424 U.S. at 80.  Unity08 engages in doctrinal sleight-of-hand by excising that standard from its proper context and grafting it onto the "major purpose" test which, contrary to Unity08's assertion, asks only whether a group's major purpose relates to the "nomination or election of a *candidate*" – not a "*clearly identified candidate*." There is no support in the law for Unity08's novel application of the "clearly identified candidate" standard to limit the "major purpose" test, which makes that test far narrower than the Court intended in *Buckley.*

Unity08's argument also defies common sense.  Whether a group's major purpose relates to the nomination and election of federal candidates does not depend on its "identification" of particular candidates by name.  A group that devotes its resources to promoting "Republican congressional candidates," "female candidates for Senate," or any other class of candidates is clearly a "major purpose" group, regardless whether all its expenditures expressly support one or more particular "clearly identified" candidates.

The logic of Unity08's argument stands for the remarkable proposition that funds raised by the national committees of any political party – including the Republican National Committee and the Democratic National Committee – cannot constitutionally be regulated until the party has held its primary election (or nominating convention) and identified *by name* its nominee to a particular federal office.  Indeed, Unity08's theory would mean that the Republican Party and

8

Democratic Party would themselves not be "political committees" subject to FECA until they had actually nominated "clearly identified" candidates – with the result that the party committees could raise unlimited soft money for the presidential campaign prior to their nominating conventions. Such an absurd result illustrates the flaws of Unity08's argument. The Supreme Court made clear in *McConnell* that any and all funds raised by political party committees – even in the period prior to nominating a specific candidate – may constitutionally be subject to the amount limits, source prohibitions and disclosure requirements of FECA in order to deter the actuality and appearance of corruption; in other words, that the parties *are* "political committees" under FECA, even before they nominate their candidates. *See McConnell*, 540 U.S. at 154-56.

It is no surprise that Unity08 offers no valid legal authority for its grafting of a "clearly identified candidate" requirement onto the "major purpose" test. The cases Unity08 cites, *Buckley* and *MCFL,* do not support its argument that a group's "major purpose" depends on whether the group has identified by name the candidates it supports or opposes. *See* Unity08 SJ Memo at 19-20. *Buckley* went no further than to limit the definition of "political committee" to groups "the major purpose of which is the nomination or election of a candidate." 424 U.S. at 79. The *MCFL* decision did not address the "major purpose" issue at all, except to note that the defendant corporation was not a "major purpose" group because its "central organizational purpose is issue advocacy." 479 U.S. at 253 n.6.[3] It further acknowledged that if the defendant's campaign-related spending "bec[a]me so extensive that the organization's major purpose may be regarded *as campaign activity*, the corporation would be classified as a political committee." 479 U.S. at 262 (emphasis added). The *MCFL* Court thus framed the "major

---

[3]     In contrast to Unity08, the not-for-profit corporation in *MCFL* was organized under section 501(c)(4) of the Internal Revenue Code, not section 527. Section 501(c)(4) groups may not lawfully have candidate election-related activities as their major purpose, whereas section 527 organizations *must* have candidate election-related activities as their major purpose. *Compare* 26 U.S.C. § 501(c)(4) *with* 26 U.S.C. § 527. *See infra* at 10-11.

purpose" test as a broad analysis of "campaign activity," and not one limited to examining activity relating only to specifically identified candidates.

Therefore, insofar as these two cases touch upon the "major purpose" test at all, they make clear that the function of this test is to protect those groups with only minimal campaign-related activities from being classified as "political committees" – *not* to provide an exemption from federal campaign finance laws for groups such as Unity08 that have the sole purpose of influencing a federal election. Contrary to Unity08's argument, the major purpose test has never been construed to apply only to organizations that support a "clearly identified" – *i.e.* nominated – candidate.

The FEC's conclusion regarding Unity08's "major purpose" is also buttressed by the fact that Unity08 has registered with the Internal Revenue Service under section 527 of the Internal Revenue Code ("IRC"). *See* AO 2006-20, at 1. A section 527 "political organization" is "organized and operated primarily" for the purpose of "accepting contributions or making expenditures" to "*influence the selection, nomination, election, or appointment of any individual to any Federal, State, or local public office.*" *See* 26 U.S.C. § 527(e)(1), (2).[4]

Thus, any entity that registers as a section 527 political organization is formed for the "primary" purpose of "influencing or attempting to influence the selection, nomination, election or appointment of" an individual to public office. The Supreme Court in *McConnell* confirmed the proposition that section 527 groups are primarily engaged in influencing elections, stating

---

[4]     Section 527 of the IRC provides tax exempt treatment for "exempt function" income received by any "political organization." The statute defines "political organization" to mean a "party, committee, association, fund, or other organization (whether or not incorporated) *organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for an exempt function.*" 26 U.S.C. § 527(e)(1) (emphasis added). An "exempt function" is defined to mean the "function of *influencing or attempting to influence the selection, nomination, election, or appointment of any individual* to any Federal, State, or local public office or office in a political organization, or the election of Presidential or Vice Presidential electors…." 26 U.S.C. § 527(e)(2) (emphasis added).

that "section 527 'political organizations' are, unlike § 501(c) groups, organized for the express

purpose of engaging in partisan political activity."  540 U.S. at 174 n.67; *see also id*. at 177

(noting that 527 groups "by definition engage in partisan political activity").  Accordingly, any

group that chooses to register as a "political organization" under section 527 – including Unity08

– is *by definition* an entity "the major purpose of which is the nomination or election of a

candidate."  Under the "major purpose" test set forth in *Buckley*, this is sufficient to meet the first

prong of the political committee test.[5]

        2.      The Second Prong: Unity08 Meets the $1,000 Expenditure Test.

Relying on its earlier decisions, the FEC found that Unity08's proposed spending to

obtain ballot access through petition drives would constitute "expenditures" pursuant to 2 U.S.C.

§ 431(9)(A)(i) and 11 CFR § 100.111(a).  *See* AO 2006-20, at 3-4; *see also* AO 1994-05 n.1

(April 18, 1994) ("[E]xpenditures to influence your election would include amounts you spend

… to promote yourself for the general election ballot by seeking signatures on nomination

petitions"); *see also* AO 1984-11 (May 3, 1984) (determining that expenses made to collect

petition signatures for the general election ballot are expenditures, and therefore are, "qualified

campaign expenses" in connection with a candidate's campaign for nomination).  Because

Unity08 therefore has made, or will make at least $1,000 in "expenditures" for this purpose, it

satisfies the second prong of the test for political committee status.

Unity08 argues that because an "expenditure" under an express advocacy standard must

be connected to a "clearly identified" federal candidate, it will not make "expenditures" until it

has nominated its "Unity ticket" presidential and vice-presidential candidates.  It further argues

---

[5]       Of course, if the 527 group is involved in influencing only State and local candidate elections or influencing only the nomination or appointment of individuals to appointive office, it would not be a federal political committee.  In this case, however, Unity08 indicates that *all* of its electoral activity will be directed to federal elections.  AO 2006-20, at 2; AOR 2006-20, at 2-4.

that current disbursements relating to ballot petitioning activities are on behalf of Unity08 itself, and are not connected to any identified candidate. Unity08 SJ Memo at 18-19. The FEC correctly rejected this argument in AO 2006-20, observing that unlike most political parties that "field a slate of Federal and non-Federal candidates," Unity08 would only field candidates for President and Vice President in the 2008 elections, and thus all of Unity08's expenditures would inure to the benefit of those two Federal candidates. AO 2006-20, at 4.

*Amici* support the FEC's rejection of Unity08's argument. With regard to the question of whether Unity08 has made (or will soon make) $1,000 in "expenditures," there are two relevant issues: first, whether the definition of "expenditure" in the case of Unity08 is limited by the "express advocacy" test and its "clearly identified candidate" language, and second, whether Unity08's proposed spending prior to nominating a specific candidate constitutes "expenditures."

*First*, for the reasons discussed above, the "express advocacy" test is not relevant to the question of whether Unity08, a "major purpose" group, is spending money to influence the election of federal candidates, and whether it is, accordingly, making "expenditures." As *Buckley* made clear, the narrowing construction of the express advocacy test is only necessary to prevent vagueness with respect to individuals and non-"major purpose" groups. *See Buckley*, 424 U.S. at 79-80. Unity08 is thus mistaken in asserting that the "express advocacy" test must be applied to judge whether its spending constitutes "expenditures." As a self-identified section 527 "political organization" formed "primarily" for the purpose of influencing the nomination and election of a 2008 presidential ticket, *see* 26 U.S.C. § 527(e)(1), and as a group that has proclaimed its purpose is to nominate and support candidates for President and Vice President, Unity08 is – like any other "major purpose" entity – subject to the facial statutory definition of "expenditure," without the limiting "express advocacy" gloss developed by the *Buckley* Court.

*Every penny* spent by Unity08 will be "for the purpose of influencing" the nomination and election of a 2008 presidential ticket and, therefore, constitutes "expenditures" under FECA.

*Second*, even if the express advocacy standard is deemed relevant to the evaluation of Unity08's expenditures, Unity08 meets even this more stringent standard.  Unity08 is spending monies on behalf of specific candidates – *i.e.* its "Unity Ticket" presidential and vice-presidential candidates – who are clearly identified by election year, office sought and party affiliation, even if not yet by name.  "Express advocacy" does not require a candidate be identified only by name instead of other "placeholder" attributes.  *See* 11 CFR § 100.22 ("Expressly advocating means any communication that … [u]ses phrases such as … 're-elect your Congressman,' 'support the Democratic nominee,' 'cast your ballot for the Republican challenger for U.S. Senate in Georgia' ... 'reject the incumbent'").  It is difficult to see how a communication to "support the Unity ticket in 08" or "elect a Unity President" is any less "express advocacy" than the examples of express advocacy provided in Section 100.22, such as "support the Democratic nominee."  *Id.*; *see also Buckley*, 424 U.S. at 44 n.51.

The FEC's position that Unity08's spending relates to "clearly identified" candidates is supported both by administrative precedent and by public policy.  In Advisory Opinion 2003-23 (Nov. 7, 2003), the FEC considered whether to allow a political committee to collect "earmarked" contributions for the Democratic Party's "presumptive nominee" pursuant to the FEC's earmarking rules that generally apply to contributions to a "clearly identified candidate." *See* 11 CFR § 110.6(b)(1).  The opinion thus deals squarely with the argument raised by Unity08, namely whether a specific candidate must be "identified" by name – *i.e.*, nominated – in order for the earmarking rules to apply.  The FEC said its rules apply to a party's yet-to-be-selected "presumptive nominee" for a *specific federal office* in a *specific federal election*:

13

> In Advisory Opinion 1982-23, the Commission concluded that it was permissible for a local committee to earmark $1,000 through a local party committee to *the as-yet unknown Republican nominee* for New York's 24th Congressional District. In Advisory Opinion 1977-16, the Commission concluded that it was permissible for a local committee to accept contributions and make expenditures on behalf of *an undetermined Federal candidate*. In both instances, the Commission concluded that it was permissible to earmark contributions to undetermined Federal candidates because *the candidates were identifiable as to specific office, party affiliation, and election cycle, although the names of the eventual nominees were not known*.
>
> Under WE LEAD's proposal, *because the presumptive nominee is identifiable as to specific office (President of the United States), party affiliation (Democratic Party), and election cycle (2004)*, the Commission concludes that contributors may earmark contributions to the presumptive nominee through WE LEAD….

AO 2002-23, at 3-4 (emphasis added).

The same is true here. Unity08's activity relates to an "as-yet unknown" party nominee who, by definition, will be a candidate. Although "as-yet unknown," this "presumptive nominee" of the Unity08 committee "is identifiable as to specific office" (President) as well as to "party affiliation" (Unity08) and "election cycle" (2008). These identifying attributes single out a specific, "clearly identified" candidate and are therefore sufficient to show that Unity08's spending satisfies even the express advocacy definition of "expenditure."

Instead of addressing this FEC precedent,[6] Unity08 relies upon the "Draft Kennedy" cases to argue that the definition of "expenditure" in the political committee test is limited by the requirement that the spending be relative to a "clearly identified" federal candidate. *See FEC v. Machinists Non-Partisan Political League* (*Machinists*), 655 F.2d 380 (D.C. Cir. 1981); *see also FEC v. Florida for Kennedy Committee*, 681 F.2d 1281 (11th Cir. 1982). The "Draft Kennedy" cases are inapplicable here, however. In those cases, the groups at issue were engaged in

---

[6]    The only mention Unity08 makes of prior FEC decisions is to allege that the "Statement of Reasons" of three commissioners in Matter Under Review 395 supported its "clearly identified candidate" limitation of the definition of "political committee." Unity08 SJ memo at 21-22. Even if this Statement of Reasons supported Unity08's argument – which it does not – it does not represent an opinion of the Commission and thus has no precedential weight. *See* 2 U.S.C. § 437c(c) (any decision of Commission requires majority vote of 4 members).

"attempts to convince the voters – or Mr. Kennedy himself – that he would make a good 'candidate,' or should become a 'candidate.'" *Machinists,* 655 F.2d at 396. There was no certainty, or even likelihood, that Kennedy would ever become a candidate within the meaning of FECA. The "draft" committees might ultimately never support any "candidate" for federal office. Here, by contrast, there is little doubt that the efforts of Unity08 will lead to the nomination and promotion of "candidates" for federal office. Indeed, the nomination of a "Unity Ticket" candidate is "Goal One" of the organization and is entirely within the control of Unity08. This case is thus wholly distinguishable from the "Draft Kennedy" situation.

Unity08's reliance upon *FEC v. GOPAC,* 917 F. Supp. 851 (D.D.C. 1996) is similarly misplaced. There, GOPAC made expenditures to support *state and local* candidates for the purpose of building a "farm team," *id.* at 854, that it hoped would some day help the Republican Party take over the U.S. House of Representatives. *Id.* at 858. GOPAC's theory was that the "reverse coattails" of strong Republican *state* candidates could indirectly boost the party's *federal* candidates on the same ticket. GOPAC , however, "did not make any direct contribution to any particular federal candidates." *Id.* at 858. Because GOPAC avoided directly supporting any "person who has decided to become a candidate for *federal* office," the Court concluded that it had not made expenditures for the purpose of influencing *federal* elections, and could not be deemed a political committee subject to federal law. *Id*. at 859 (emphasis added).

Unity08 attempts to use *GOPAC* to argue that political committee status requires expenditures in support of an *already-nominated* candidate. But *GOPAC* does not stand for this proposition. In GOPAC, the court simply made clear that GOPAC's *direct* support of state and local candidates would not trigger political committee status simply because of any *indirect*

15

effect this support had on federal elections.  In contrast to GOPAC's activities, Unity08 has

stated that its only goal is to nominate and support *federal* candidates in the 2008 election cycle.

Thus, the case law cited by Unity08 does not support its argument that its spending prior to

nominating a specific candidate will not constitute "expenditures."

## II.    The FEC's Determination that Unity08 Is a "Political Committee" Does Not Violate the First Amendment.

The Supreme Court has rejected First Amendment challenges to FECA's regulation of

"political committees" as defined by 2 U.S.C. § 431(4)(A), and has found that such regulation is

supported by important governmental interests, including the prevention of corruption and the

appearance of corruption.  *See, e.g., Buckley*, 424 U.S. at 25-29; *CalMed*, 453 U.S. at 193-99.

Because Unity08 meets the definition of a "political committee," it follows that it is subject to

FECA, and that this regulation is consistent with the First Amendment and supported by the

same governmental interests found to support FECA in *Buckley*.

Unity08 attempts to turn this reasoning on its head, suggesting that Congress and the FEC

must make a particularized showing that its specific factual situation presents the potential for

corruption.  *See* Unity08 SJ Memo at 9 ("Neither Congress nor the FEC has identified any

potential for corruption or the appearance of corruption where an organization seeks ballot

access in its own name without supporting a specific candidate.")  But the First Amendment does

not require that the government make a case-by-case demonstration of potential corruption for

every group that is deemed a political committee and thus subject to FECA.  If an organization

meets the federal law definition of "political committee," it can be constitutionally obligated to

comply with the campaign finance laws based on the wholly justifiable presumption that

unregulated fundraising and spending by such entities poses a threat of real and apparent

corruption of federal candidates and officeholders.

Nevertheless, although the burden does not lie with the FEC to make an individualized showing in this case, it is clear that allowing Unity08 to operate outside of FECA's "political committee" disclosure requirements, contribution limits and source prohibitions would pose a serious threat of real and apparent corruption. Large donations to Unity08 will create actual or apparent indebtedness on the part of the Unity08 presidential and vice-presidential nominees – regardless whether the contributions are made before or after Unity08 nominates its candidates.

A.    The Supreme Court Has Found That The Regulation of Political Committees Under FECA Does Not Violate the First Amendment.

Contrary to Unity08's insistence that only "corruption, the risk of corruption, or appearance of corruption" will justify the regulation of election-related activities, Unity08 SJ Memo at 9, the Supreme Court has recognized that a number of government interests are served by the regulation of political committees, including not only the anti-corruption interest noted by Unity08, but also the public's informational interest in disclosure, and the government's interest in preventing circumvention of campaign finance requirements.

In *Buckley*, the Supreme Court considered whether the disclosure requirements and contribution restrictions imposed by FECA on political committees comported with the First Amendment. Even though the Court recognized that these legal requirements represented a "significant interference with protected rights of political association," it sustained these requirements as a "closely drawn" means to further "sufficiently important interests" of the state. 424 U.S. at 25 (internal quotations omitted). It recognized that contribution limits prevented "corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office." *Id*. Disclosure was supported by a broader array of interests including: "provid[ing] electorate with information as to where political campaign money comes from … [and] the interests to

which a candidate is most likely to be responsive," "deter[ing] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "gathering the data necessary to detect violations of the contribution limitations." *Id*. at 66-68.

The Supreme Court expanded upon its holding in *Buckley* when it considered FECA's $5,000 annual limit on contributions to multi-candidate political committees in *CalMed*. *See also* 2 U.S.C. § 441a(a)(1)(C). As Unity08 does here, the appellants in *CalMed* asserted that the danger of actual or apparent corruption discussed in *Buckley* did not apply to contributions to non-candidate-controlled political committees. 453 U.S. at 197-98. The Supreme Court disagreed. It found that the $5,000 limit "further[ed] the governmental interest in preventing the actual or apparent corruption of the political process" by "prevent[ing] circumvention of the very limitations on contributions [to candidates] that this Court upheld in *Buckley*." *Id*. at 197-98. Absent the limit on contributions to political committees, an individual "seeking to evade the $1,000 limit on [individual] contributions to candidates could do so by channeling funds through a [] political committee." *Id*. at 198.

In *McConnell*, the Court further developed its analysis of the government's anti-corruption interest in the context of upholding provisions banning the raising and spending of "soft money" – *i.e.,* federally unregulated funds – by political party committees. 540 U.S. at 134-73. For instance, the "core" soft money provision at issue in *McConnell* subjected all funds raised and spent by the national political parties to federal contribution limits and source prohibitions, regardless of when the funds were raised or spent, or for what purposes. *See* 2 U.S.C. § 441i(a). In finding these provisions to be justified by the government's interest in preventing actual and apparent corruption, the Court defined corruption broadly as "undue

influence on an officeholder's judgment, and the appearance of such influence." *Id*. at 150, *quoting FEC v. Colorado Republican Federal Campaign Comm*., 533 U.S. 431, 441 (2001). The Court noted that large contributions made to party committees "are likely to create actual or apparent indebtedness" on the part of the parties' federal candidates and thereby enable contributors to gain access and influence over candidates. *Id*. at 146-48 (influence), 149-51 (access and influence).

      B.    <u>The Regulation of Unity08 as a Political Committee Is Justified by the Important</u>
<u>Government Interests Recognized in *Buckley*, *CalMed* and *McConnell*.</u>

Unity08 has not shown that it is distinguishable from the political committees considered in the case law detailed above. Because Unity08 is a political committee, regulation of its fundraising is supported by the strong governmental purposes articulated in *Buckley*, *CalMed* and *McConnell*. Financial disclosure by political committees, such as Unity08, provides the electorate with useful information and deters corruption through publicity, while limits on contributions to political committees such as Unity08 combat corruption and the appearance of corruption in the electoral system, and prevent large donors from circumventing the limits on direct contributions to candidates by using committees as a pass-through for their donations.

Unity08 does not explain why these compelling governmental interests are relevant only *after* it nominates its presidential and vice-presidential candidates. Its analysis boils down to the claim that "without a candidate, there is no prospect for corruption." Unity08 SJ Memo at 10.

This assertion is at best myopic; at worst, simply untrue. After the online nominating convention planned for summer of 2008, Unity08 will have two party nominees who will be the beneficiaries of all activities conducted by Unity08 prior to their nomination, including the funds it raised and the expenditures it made to obtain ballot positions for these nominees. This situation creates actual or apparent indebtedness on the part of the nominees to Unity08 and its

financial backers. There is no reason to believe that that Unity08's candidates will disregard the large contributions made to the party solely because they were made prior to their nomination. As was the case with soft money contributors to party committees prior to BCRA, large donors to Unity08 can potentially obtain undue access and influence over Unity08's candidates, and thereby pose a threat to the integrity of the political system. *See McConnell*, 540 U.S. at 146-51. The same is true with regard to public disclosure. If Unity08 were exempt from the campaign finance laws, it would be permitted to build the infrastructure for its presidential/vice-presidential campaign, including securing ballot positions for its nominees, without any obligation to report its financial activity to the FEC prior to its nomination of candidates. Upon its nomination of candidates, Unity08 would be the only political committee running federal candidates that would not have provided the public with complete information regarding its financial activities. This "blackout" in campaign finance disclosure would be particularly problematic given that Unity08 would also, under its reasoning, be exempt from contribution limits and source prohibitions. The public has a strong interest in receiving information about the financial activity of Unity08, including disclosure of early contributors to the Unity08, in order to be able to evaluate the "interests to which [the Unity08 nominees] would most likely to be responsive" and to make "predictions of [their] future performance in office." *Buckley*, 424 U.S. at 66-67.

## <u>CONCLUSION</u>

For the foregoing reasons, Advisory Opinion 2006-20 does not violate the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) or the First Amendment. Accordingly, this Court should deny plaintiffs' motion for summary judgment, and grant defendant's motion for summary judgment.

**Respectfully submitted**,


/s/ J. Gerald Hebert
J. GERALD HEBERT
(D.C. Bar No. 447676)
PAUL S. RYAN
(D.C. Bar No. 502514)
THE CAMPAIGN LEGAL CENTER
1640 Rhode Island Ave., NW
Suite 650
Washington, D.C.  20036
Tel: (202) 736-2200

Counsel for *Amici Curiae*
  Campaign Legal Center


Donald J. Simon
(D.C. Bar No. 256388)
SONOSKY, CHAMBERS, SACHSE,
ENDRESON & PERRY, LLP
1425 K Street, N.W.
Suite 600
Washington, D.C. 20005
(202) 682-0240

Fred Wertheimer
(D.C. Bar No. 154211)
DEMOCRACY 21
1875 I Street, N.W.
Suite 500
Washington, D.C. 20005
(202) 429-2008

Counsel for *Amicus Curiae*
  Democracy 21

**Dated:  April 11, 2007**