UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
UNITY08 et al.,               )
                              )
        Plaintiffs,           )
                              )
        v.                    )        Civil Action No. 07-0053 (RWR)
                              )
FEDERAL ELECTION COMMISSION,  )
                              )
        Defendant.            )
_____)
```

MEMORANDUM OPINION

Plaintiffs Unity08, Douglas Baily, Roger Craver, Hamilton Jordan, Angus King, and Jerry Rafshoon bring this action against defendant Federal Election Commission ("FEC" or the "Commission") seeking declaratory and injunctive relief preventing the FEC from regulating Unity08 as a political committee under the Federal Election Campaign Act, 2 U.S.C. §§ 431 et. seq. ("FECA" or "the Act").  The parties have filed motions for summary judgment. Because the FEC's interpretation of the Act is reasonable and does not impermissibly infringe on the plaintiffs' rights under the First Amendment, the FEC's motion for summary judgment will be granted.

BACKGROUND

Unity08 is a not-for-profit corporation organized under the laws of the District of Columbia, and exempt from federal income taxation under section 527 of the Internal Revenue Code of 1986

(Compl. ¶ 3.)  It defines itself as a "political movement" aimed at "getting our country back on track by nominating and electing a Unity Ticket in the [2008] presidential election."  (<u>Id.</u> ¶ 4-5.)  Unity08 also asserts that it "seeks to effect major change and reform in the 2008 national elections" through its organization of voters who share its agenda.  (<u>Id.</u> ¶ 11.)  It will use its website to disseminate "its analysis that the [United States] needs to focus on crucial issues," and by "raising and spending money to qualify Unity08 for a position on the ballot in . . . approximately thirty-seven (37) states." (<u>Id.</u>)  To raise the roughly $10 million to $12 million that Unity08 estimates it would cost to qualify for ballot access in thirty-seven states, Unity08 would solicit funds "through the Internet and personal contacts."  (Id. ¶¶ 11-13, 16.)  Unity08 planned to hold an "Internet on-line nominating convention" after qualifying for ballot access to select its candidates for President and Vice President.  (<u>Id.</u> ¶ 18.)

Unity08 filed an advisory opinion request with the Federal Election Commission asking whether Unity08 would be considered a "political committee" before the conclusion of its on-line convention in the summer of 2008.  (<u>See</u> Compl. at ¶ 13; Pls' Mem. of Law in Support of Mot. for Summ. J. ("Pls.' Mem.") at 5-6.) FECA defines a political committee as a group which receives contributions or makes expenditures over $1,000 in a calendar

year to influence a federal election.  2 U.S.C. § 431(4)(A),
(8)(A)(i), (9)(A)(i).  If Unity08 were defined as a political
committee, Unity08 would be subject to fundraising and spending
restrictions, as well as filing requirements.  (Def.'s Mem. of
Law in Support of Mot. for Summ. J. ("Def.'s Mem.") at 5-6.)
Before the FEC issued its advisory opinion, Unity08 voluntarily
refused to accept contributions from individuals of more than
$5,000[1].  (Id.)

The FEC issued Advisory Opinion ("AO") 2006-20, concluding
that Unity08 would be a political committee once it spent more
than $1,000 for ballot access because spending money for ballot
access was an "expenditure" under the Federal Election Campaign
Act ("FECA"), 2 U.S.C. §§ 431 et seq:

> Monies spent by Unity 08 to obtain ballot access
> through petition drives will be expenditures.  An
> "expenditure" is a "purchase, payment, distribution,
> loan, advance, deposit, or gift of money or anything
> of value, made by any person for the purpose of
> influencing any election for Federal office."  42
> U.S.C. 431(9)(A)(i); 11 CFR 100.111(a).
>
> The Commission has previously determined that expenses
> incurred in gathering signatures to qualify for a
> ballot for Federal office are expenditures.  See
> Advisory Opinion 1994-05 n.1 (White) ("[E]xpenditures
> to influence your election would include amounts you
> spend . . . to promote yourself for the general
> election ballot by seeking signatures on nomination
> petitions"); see also Advisory Opinion 1984-11

---

[1] In its Complaint, Unity08 alleges that the individual
plaintiffs to this action would have "contributed substantially
more than $5,000" to Unity08 were it not for the threat of
prosecution by the FEC.  (Compl. at ¶¶ 27-28.)

- 4 -

(Serrette) (determining that expenses made to collect
petition signatures for the general election ballot are
expenditures, and therefore are, "qualified campaign
expenses," which are expenses made in connection with a
candidate's campaign for nomination, see 11 CFR
9032.9).

Although Unity 08 plans to qualify for ballot access
for itself as an organization, but not yet for any
named candidates, Unity 08 is, in effect, using its
name as a placeholder for its candidates' names on the
ballot.  Moreover, unlike organizations that secure
ballot access for themselves in order to field a slate
of Federal and non-Federal candidates, Unity 08 has
announced that it will field only two candidates - for
the offices of President and Vice President - in the
2008 election only.  Thus, in promoting itself through
petition drives to obtain ballot access, Unity 08 is
promoting its presidential and vice-presidential
candidates, and any payments by Unity 08 for these
activities will constitute expenditures.

(AO 2006-20 at 3-4.)  The FEC also determined that Unity08 met

the "major purpose" test for a "political committee," and

therefore the FEC was not prevented by the First Amendment from

exercising jurisdiction over Unity08:

Unity 08's self-proclaimed major purpose is the
nomination and the election of a presidential candidate
and a vice-presidential candidate.  Unity 08 clearly
states this goal in its advisory opinion request and on
its website.  While Unity 08 has a subsidiary objective
of influencing the major parties to adopt, in
connection with the 2008 national elections, the core
positions of Unity 08 supporters, your letters of May
30 and August 16, as well as Unity 08's website, state
that Unity 08's first goal is the election "of a Unity
Ticket for President and Vice-President of the United
States in 2008."

Therefore, given that Unity 08 is making "expenditures"
under the Act and Commission regulations, Unity 08 will
become a political committee once it makes more than
$1,000 in expenditures.  Unity 08 must register with
the Commission by filing a statement of organization

- 5 -

> within ten days after becoming a political committee,
> and it will be subject to the provisions of the Act and
> Commission regulations applicable to political
> committees.  See 2 U.S.C. 433, 11 CFR 102.1 and 102.2.

(AO 2006-20 at 4.)

The plaintiffs filed this action seeking to enjoin the FEC
from enforcing AO 2006-20 against them, and seeking a declaratory
judgment that AO 2006-20 violated plaintiffs' First Amendment
right as applied to them.  They have moved for summary judgment,
arguing that, as a matter of law, the FEC's interpretation of the
Act violated Unity08's rights under the First Amendment.[2]  (Pls.'
Mem. at 1-2.)  The FEC has cross-moved for summary judgment,
arguing that Unity08 lacks standing to bring this action, and
that even if Unity08 has standing, the challenged interpretation
should be upheld as a matter of law because it was neither
arbitrary nor capricious, and because it did not infringe on the
plaintiffs' First Amendment rights.[3]  (Def.'s Mem. at 1-3.)

---

[2] Unity08 later suspended its efforts to get on the ballot
as a political organization pending this litigation, but said it
might resume its operation if it prevails here.  (See Pls.' Mot.
for Expedited Consideration at 1-3.)

[3] Two organizations (Campaign Legal Center and Democracy 21)
have filed an opposed motion for leave to file Amici Curiae
briefs.  (Mot. for Leave to File as Amici Curiae at 1-3.)
Because the movants adequately describe their interests in this
case and demonstrate that their perspectives are relevant to the
disposition of the case, their motion for leave to file will be
granted.

## DISCUSSION

Federal Rule of Civil Procedure 56 states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  "When ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely in dispute."  Barr Labs., Inc. v. Thompson, 238 F. Supp. 2d 236, 244 (D.D.C. 2002).

I.   STANDING

"[A] showing of standing is an essential and unchanging predicate to any exercise of [a court's] jurisdiction."  Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (citation and internal quotation omitted).  "As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing."  Autozone Dev. Corp. v. Dist. of Columbia, 484 F. Supp. 2d 24, 28 (D.D.C. 2007).  In considering whether a plaintiff has standing, a court accepts as true all of the factual allegations contained in the complaint, Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998), and may also

- 7 -

consider "undisputed facts evidenced in the record." <u>Coal. for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198 (D.C. Cir. 2003).

In order to establish standing, the plaintiffs must allege a personal injury in fact, that is traceable to the defendant's conduct, and that is redressable by the relief requested by the plaintiff. <u>See</u> <u>Int'l Bhd. of Teamsters v. Transp. Sec. Admin.</u>, 429 F.3d 1130, 1133 (D.C. Cir. 2005). "Specifically, standing to bring a constitutional claim requires (1) 'injury in fact' which is (a) 'concrete and particularized' and (b) 'actual and imminent, not conjectural' or hypothetical[,]' . . . (2) a 'causal connection between the injury and the conduct complained of[,]'" <u>Wright v. Foreign Serv. Grievance Bd.</u>, 503 F. Supp. 2d 163, 171 (D.D.C. 2007) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)), and (3) a showing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Lujan</u>, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" <u>Id.</u> at 561.

A.  <u>Traceable Injury</u>

The FEC argues that the plaintiffs did not suffer an injury in fact that was causally connected to the FEC's administrative opinion.  To vindicate its own rights or entitlements, as opposed

to those of its members, an organizational plaintiff must establish that its "discrete programmatic concerns are being directly and adversely affected by the challenged action." Common Cause v. FEC, 108 F.3d 413, 417 (D.C. Cir. 1997) (citing Nat'l Taxpayers Union, Inc. v. U.S., 68 F.3d 1428, 1433 (D.C. Cir. 1995)).  This standard may be satisfied only by a showing that Unity08 has suffered a "concrete and demonstrable injury" to its organizational activities, in conjunction with a depletion of resources, that constitutes more than a simple inconvenience to "abstract social interests."  Id. (citing Nat'l Taxpayers Union, 68 F.3d at 1433).

The FEC argues that Unity08 did not suffer a concrete injury that was casually related to AO 2006-20 because Unity08 voluntarily adopted a $5,000 limit on the personal donations it would accept.  The FEC also argues that Unity08 did not produce evidence of donors who were willing to lend more than $5,000 to Unity08.  (Def.'s Mem. at 9.)  However, plaintiffs allege in the complaint that "each plaintiff would lend or contribute more than $5,000 to Unity08" if not for AO 2006-20.  (See Compl. at ¶¶ 27-28.)  They also provide the affidavit of plaintiff Baily, Unity08's President and Chief Executive Officer, who asserted that in late 2006, Unity08 decided as an organization that it could no longer successfully limit itself to donations of $5,000 or less from individual donors.  Baily also asserted that he

would have lent more than $5,000 to Unity08 if the FEC had not issued AO 2006-20, because he feared prosecution by the FEC. (See Pls.' Resp. to Def.'s Mem. ("Pls.' Resp.") at 8-9; see also Pls.' Mem. Ex. 1 at ¶ 64.)  Further, Unity08 has alleged that the failure to obtain contributions in excess of $5,000 impeded its ability to organize a campaign to obtain ballot access for the 2008 election by depriving it of the funds necessary to begin its campaign, and to develop technology necessary for its "online convention."  (Pls.' Mem. Ex. 1 at ¶¶ 52-56.)  The FEC argues that the plaintiffs lack standing because, under 11 C.F.R. 100.82, even if Unity08 were defined as a political committee, Unity08 could obtain "loans" made "by a bank 'in the ordinary course of business,'" because that type of loan is not defined as a "contribution" under the FECA.  (Def.'s Reply at 2.)  However, as shown by Baily's affidavit, Baily is not a "bank" who would be making a loan in the "ordinary course of business," and the FEC does not point to any evidence in the record that such institutions were willing to lend Unity08 money.  Thus, at the very least, Unity08 has shown that there are sufficient facts in the record to demonstrate that it suffered a concrete injury that was fairly traceable to AO 2006-20.  See Abigail Alliance for Better Access to Dev. Drugs v. Von Eschenbach, 469 F.3d 129, 133 (D.C. Cir 2006) (organizational plaintiff had standing where it alleged that its "counseling, referral and advocacy" activities

were directly impeded by defendant); <u>A.N.S.W.E.R. Coal. v. Kempthorne</u>, 493 F. Supp. 2d 34, 45 (D.D.C. 2007) (plaintiff had organizational standing where organizational plaintiff was "an object of the action at issue").

B.   <u>Redressability</u>

The FEC argues that Unity08 cannot show redressability because, even if AO 2006-20 were to be invalidated, the FEC would still find Unity08 to be a political committee since it qualifies by having exceeded the $1,000 threshold for contributions received.  However, "plaintiffs need not demonstrate that judicial review of the FEC's interpretation will lead to the ultimate relief sought. . . .  Rather, '[a] remand that would leave the agency free to exercise its discretion in a proper manner, then, could lead to agency action that would redress petitioner's injury.'"  <u>Natural Law Party of the U.S. v. FEC</u>, 111 F. Supp. 2d 33, 50 (D.D.C. 2000) (quoting from <u>Competitive Enterprise Inst. v. Nat'l Highway Traffic Safety Admin</u>., 901 F.2d 107, 118 (D. C. Cir. 1990); <u>see also</u> <u>Akins v. FEC</u>, 101 F.3d 731 (D. C. Cir. 1996) (adverse decision by FEC redressible even if FEC would come to the same decision for other reasons).  Thus, Unity08 has alleged sufficient facts to establish a concrete injury in fact that is fairly traceable to AO 2006-20 that would be redressible by a favorable decision in this court.

- 11 -

II.  FINAL AGENCY ACTION

The FEC argues that the plaintiffs' claim should be dismissed as not ripe because AO 2006-20 did not constitute final agency action.  Instead, says the FEC, the AO was a negative advisory opinion that did not bind the plaintiffs because the plaintiffs could challenge in court any subsequent prosecution brought by the FEC.  The FEC also argues that a subsequent prosecution would further clarify its position on the issues necessary to resolve this challenge.

An agency action is considered final if it is "definitive" and has a "'direct and immediate . . . effect on the day-to-day business'" of the party challenging it.  FTC v. Standard Oil Co., 449 U.S. 232, 239 (1980) (quoting & citing Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)).  In determining the fitness of an issue for judicial review, a court examines whether the issue "is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final."  Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1204-1205 (D.C. Cir. 1998) (quoting Nat. Resources Defense Council, Inc. v. EPA, 22 F.3d 1125, 1133 (D.C. Cir. 1994)).

Here, the issues in dispute are purely legal.  There are no factual issues left to be determined that would benefit from a

- 12 -

more concrete setting.  The FEC notes that advisory opinions granted in response to requests are not as final as an enforcement action.  However, the individual plaintiffs' affidavits demonstrate that, but for AO 2006-20, plaintiffs intended to contribute more than $5,000 to Unity08.  When a plaintiff has a demonstrable "intent to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," the plaintiff "'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"  Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).  A credible threat of prosecution exists where a plaintiff's desired course of action is covered by a statute that is generally enforced.  Id. at 302.  The plaintiffs correctly argue that actions regulated under the FECA face a unique threat of enforcement because the statute "permits a private party to challenge the FEC's decision not to enforce" a provision, meaning that a political competitor could challenge the FEC's decision not to enforce AO 2006-20.  Chamber of Commerce v. Federal Election Comm'n., 69 F.3d 600, 603 (D.C. Cir. 1995).  Further, the FEC's advisory opinion ostensibly deters the plaintiffs' from engaging in behavior protected by the First Amendment.  "A party has standing to challenge, pre-enforcement, even the constitutionality of a statute if First Amendment rights

are arguably chilled, so long as there is a credible threat of prosecution."  Id.; see also Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 395 (1988) (plaintiffs had standing in case where the "alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.").  Therefore, because the plaintiffs allege that they face a credible threat of prosecution since the AO 2006-20 would prevent behavior arguably protected by the First Amendment, and because there is no need to rely upon future enforcement proceedings to resolve the remaining issues which are purely legal, the plaintiffs' challenge is fit for review.

III. POLITICAL COMMITTEE

The plaintiffs argue that the FEC's interpretation of "political committee" and "expenditure" in AO 2006-20 infringe on the plaintiffs' First Amendment rights to freedom of political expression.  A "political committee" is "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year."  2 U.S.C. § 431(4)(A).  Under the Act, a "contribution" is "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office."  Id. § 431(8)(A)(i).  The Act defines "expenditure" as "any purchase,

- 14 -

payment, distribution, loan, advance, deposit, or gift of money
or anything of value, made by any person for the purpose of
influencing any election for Federal office." Id.
§ 431(9)(A)(i).  Once a group is found to be a "political
committee," it is required to "submit to an elaborate panoply of
FEC regulations requiring the filing of dozens of forms, the
disclosing of various activities, and the limiting of the group's
freedom of political action to make expenditures or
contributions." FEC v. Machinists Non-Partisan Political League,
655 F.2d 380, 392 (D.C. Cir. 1980).

     The plaintiffs do not appear to argue that the FEC's
interpretation of the term "political committee" is an
unreasonable reading of the FECA, or that this interpretation is
inconsistent with the unambiguous language of the statute. See
Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467
U.S. 837 (1984).  The FEC argues that its determination of
whether AO 2006-20 infringes the plaintiffs' First Amendment
rights is entitled to Chevron deference.  However, "the
Commission's advisory opinions are not entitled to Chevron
deference [when] they are necessarily based upon the Commission's
interpretation of the Constitution as construed by the Supreme
Court and our Court of Appeals." Federal Election Comm'n v.
GOPAC, 917 F. Supp. 851, 860 (D.D.C. 1996); see also Chamber of
Commerce, 69 F.3d at 604-605 (holding that the FEC was "not

entitled to <u>Chevron</u> deference with regard to" whether its
interpretation of the FECA infringed the plaintiff's First
Amendment right to communicate with its members).  Therefore, the
question is whether the FEC's interpretation of FECA infringes on
First Amendment rights.  <u>Republican Nat'l Comm. v. Federal</u>
<u>Election Comm'n</u>, 76 F.3d 400, 409 (D.C. Cir. 1996) (citing <u>Rust</u>
<u>v. Sullivan</u>, 500 U.S. 173, 190 (1991).

      The Supreme Court has determined that a broad statutory
definition of "political committee," which turns on the terms
"contribution" and "expenditure," and on the phrase "for the
purpose of influencing any election," can encompass "both issue
discussion and advocacy of a political result," and therefore
impermissibly encroaches upon First Amendment values.  <u>Buckley v.</u>
<u>Valeo</u>, 424 U.S. 1, 79 (1976).  As the D.C. Circuit has explained,
the <u>Buckley</u> Court "explicitly recognized the potentially vague
and overbroad character of the 'political committee' definition
in the context of [the Act's] disclosure requirements."
<u>Machinists</u>, 655 F.2d at 391.  Therefore, the Supreme Court
created the "major purpose" test; to fulfill the purposes of the
Act, the term "political committee" "need only encompass
organizations that are under the control of a candidate or the
major purpose of which is the nomination or election of a
candidate."  <u>Buckley</u>, 424 U.S. at 79.  Under the "major purpose"
test, an organization may be considered a "political committee"

- 16 -

if it "receives contributions and/or makes expenditures of $1,000 or more, and its 'major purpose' is the nomination or election of a particular candidate or candidates for federal office." GOPAC, 917 F. Supp. at 861.  An organization's public statements of its purpose, or its expenditures in cash or in kind to or for the benefit of a particular candidate or candidates, may be used as evidence of its purpose.  Id. at 859.  However, even if the organization's major purpose is the election of a federal candidate or candidates, the organization does not become a "political committee" unless or until it makes expenditures in cash or in kind to support or for the benefit of a "person who has decided to become a candidate" for federal office.  See GOPAC, 917 F. Supp. at 859.  "'Political committee' was defined in this way by the [Buckley] Court for the purpose of 'focusing precisely' FECA's broadly worded provisions on 'the narrow aspect of political association' which could constitutionally be restricted, because its potential for corruption had been specifically identified by Congress."  Id.; Machinists, 655 F.2d at 392.  Therefore, if a group's activities are not related in any way to a candidate, the "actuality and potential for corruption" are not present.  Id.

     The plaintiffs argue that the money spent by Unity08 to obtain ballot access for its eventual nominees cannot be deemed to be expenditures without infringing on the plaintiffs' rights

under the First Amendment, because Unity08 does not yet have a clearly identified candidate for federal office, and thus cannot be deemed a political committee under Buckley. However, Unity08 is indeed using its name as a placeholder for its candidates' names on the ballot. By the plaintiffs' own admissions, all of the money that they spend for ballot access measures will support candidates who are clearly identified by party affiliation and by the offices they seek to run for, if not yet by name. Unity08 acknowledged in the material that it provided to the FEC when requesting the advisory opinion that its "Goal One" was to "elect a Unity Ticket for President and Vice President of the United States in 2008." AO 2006-20 at 2. To that end, allowing the eventual Unity08 nominees to use Unity08's ballot access may be deemed an expenditure by the FEC without running afoul of Buckley because ballot access will give between $10 million and $12 million worth of support to the nominees who will have decided to become candidates for federal office when they benefit from this support. (See Pls.' Statement Material Facts as to Which There is No Genuine Dispute at ¶ 27.) The plaintiffs acknowledge that the "concern that contributions to the candidate could result in quid pro quo corruption or its appearance is what justifies the impingement on protected speech." (Pls.' Mem. at 10 (emphasis in original).) Yet they fail to consider that the appearance of quid pro quo corruption is present when a candidate receives the

- 18 -

benefit of appearing on a party ballot - - a ten to twelve million dollar benefit - - solely due to the efforts of Unity08. See Buckley, 424 U.S. at 25 ("the appearance of corruption [is] spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office.").

Machinists and GOPAC do not bar the FEC from finding that Unity08 is a political committee just because its support has been for candidates who are certain to be clearly identifiable only in the future.  In Machinists, the court of appeals determined that groups whose sole purpose was to convince a Senator to attempt to run for his party's nomination for President were not political committees.  655 F.2d at 396. However, in Machinists, it was not certain that the money that the defendant organizations spent was going to benefit a person who would decide to be a candidate for federal office; the money was intended to convince voters, or the Senator himself, that the Senator should be a candidate.  Id.  Unlike the money spent by Unity08 to provide sure future federal candidates ballot access, there was no certainty that the Senator would ever run for President.  In GOPAC, the district court determined that money spent to support state and local candidates who might later become federal candidates was not an expenditure because of the uncertainty of whether the state and local candidates receiving

- 19 -

the support would ever run for federal office, and thus that the
organization providing that money was not a political committee.
GOPAC, 917 F. Supp. at 858-859.  However, Unity08 will be
providing resources that are certain to benefit candidates who
will be identified by party affiliation and office sought, and
who will have declared their intentions to run for federal office
when this benefit is conferred upon them.  Therefore, the FEC's
conclusion that Unity08 is a political committee does not violate
the First Amendment because Unity08's major purpose is to
influence a federal election by spending money to enable ballot
access for candidates for federal office who are certain to be
clearly identifiable.

<u>CONCLUSION</u>

Because the FEC is entitled to judgment as a matter of law,
the plaintiffs' motion for summary judgment will be denied, and
the FEC's motion for summary judgment will be granted.  A final
Order accompanies this Memorandum Opinion.

SIGNED this 16th day of October, 2008.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge